UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

PAYCARGO, LLC,

    Plaintiff,

v.

PAVEL GALBREATH a/k/a PASHA
GALBREATH a/k/a PASHA PROBIV,

    Defendants.
_____/

CASE NO.: 1:20-cv-22885

## COMPLAINT

Plaintiff PAYCARGO, LLC ("Plaintiff" or "PayCargo") hereby sues Defendant, PAVEL GALBREATH a/k/a PASHA GALBREATH a/k/a PASHA PROBIV, and alleges as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff PayCargo is a Delaware limited liability company with its principal place of business in Miami-Dade County, Florida.

2. Defendant Pavel Galbreath a/k/a Pasha Galbreath a/k/a Pasha Probiv ("Galbreath") is an individual who is at least 18 years of age, resides in Connecticut and is otherwise *sui juris*.

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties to this case and because the amount in controversy exceeds $75,000.00.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c) insofar as it alleges a claim based upon the laws of the United States based on Plaintiff's allegations of misappropriation of trade secrets.

5. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1337 because the state law claims are so related to the federal law claims that they constitute the same case or controversy.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred arose in this district.

## GENERAL ALLEGATIONS

### Galbreath's Employment at PayCargo

7. PayCargo provides an electronic payment platform designed to process payments in the freight and logistics industry. This system allows for payers to make payments for cargo shipments to a network of vendors and facilitates the prompt release of said cargo by the vendors.

8. Galbreath worked for PayCargo from in or about July, 2017 until on or about August 15, 2018.

9. Galbreath was employed as PayCargo's Chief Technology Officer ("CTO"), during which time Galbreath enjoyed unlimited access to PayCargo confidential and propriety systems and technologies. Galbreath directed the PayCargo technology team as well as architected a major redesign of the PayCargo System.

10. Galbreath worked out of PayCargo's office in Miami-Dade County, Florida.

11. In connection with his employment, Galbreath signed the PayCargo Employee Agreement attached as **Exhibit A**.

12. Pursuant to the Employee Agreement, Galbreath agreed to not disclose any of PayCargo's Trade Secrets. More specifically, Galbreath agreed to "not use, disclose, or disseminate to any other person, organization, or entity or otherwise employ any Trade Secrets." Such Trade Secrets are defined as including but not limited to "a) data or information that is

competitively sensitive or commercially valuable and not known to the general public [and] b) scientific or technical information, design, process, formula, or improvement, computer software, object code, source code, specifications, inventions, systems information, whether or not patentable or copyrightable."

13. Galbreath also agreed "not to use, disclose, or disseminate to any other person, organization, or entity or otherwise employ any Confidential Information," during "and after the cessation of [his] employment with [PayCargo]." Confidential Information was defined as "any data or information and documentation, other than Trade Secrets, which is valuable to the Company, its customers, vendors, or other third parties and not generally known to the public."

14. Pursuant to the Employee Agreement, Galbreath also agreed to "assign and agree to assign, free of any obligation whatsoever to [PayCargo] . . . [his] entire right, title and interest in any developments, designs, patents, inventions and improvements, trade secrets, trademarks, service marks, corporate names, domain names, copyrightable subject matter . . . or proprietary information which [Galbreath] made, or may make . . . while [] employed by [PayCargo] and/or with the use of the time, material or facilities of the Company, and/or resulting from any tasks assigned to me or work performed by me for or on behalf of the Company."

15. The Employee Agreement also prohibited the use of any PayCargo computing platforms, system or data for personal use and only authorized internal use of the same. Galbreath further agreed not to engage in any unauthorized access into PayCargo's platform in systems.

16. Galbreath additionally agreed to be bound by PayCargo's Code of Conduct (attached as **Exhibit B**).[1] In relevant part, the PayCargo Code of Conduct provides:

---

[1] The attached version is an unsigned copy which is dated after Galbreath's employment. However, the terms are materially the same as those agreed to by Galbreath.

> Some of our most valuable assets are not in tangible form but instead are intellectual property, which includes trademarks, service marks, patents, and copyrighted material. Also included is confidential, proprietary information such as trade secrets, customer lists, computer software and source code, sales and profit data, and strategic business plans (for instance, possible mergers and acquisitions). Since our company's continued success depends on the careful development, use and protection of our intellectual property, we have a duty to protect it. We must take care not to discuss it where others may hear. We must also be sure not to transmit it in any form, or to any recipient, where unauthorized persons might receive it. Before transmitting intellectual property outside the company, including to a consultant or contractor, obtain the approval of PayCargo's legal counsel. Our obligation to preserve the confidentiality of PayCargo's proprietary information continues even after we are no longer employees of the Company.

[Code of Conduct at pg. 3-4].

17. In connection with Galbreath's role as PayCargo's CTO, he was involved in the following aspects of PayCargo's most sensitive information and had full access to, among other things: customer lists, customer bank account information, customer transaction histories, system architecture, hosting accounts and configuration of same, money flow processes, the National Automated Clearing House Association ("NACHA") process (money movement instructions), the PayCargo source code, code management tools, development management tools, internal communications tools, customer service management tools, customer facing website security programs, and the system's production servers (the "Trade Secrets").

18. Galbreath maintained copies of certain of the Trade Secrets on his personal computer, in addition to his authorized PayCargo laptop.

## Galbreath's Termination from PayCargo

19. Attempting to negotiate a salary raise, on or about July 23, 2018, Galbreath tendered his resignation to purportedly "start [his] Cyber Security practice by Sept 1st, 2018." Instead of offering a raise, PayCargo accepted Galbreath's resignation.

20. On August 12, 2018, after Galbreath unilaterally removed an authorized individual's access to the PayCargo system, PayCargo instructed Galbreath to transfer, among other things, his system access and credentials to the individual authorized by PayCargo in anticipation of Galbreath's impending departure from PayCargo.

21. Galbreath refused to transfer his access credentials.

22. Galbreath's refusal led to his immediate termination on or about August 15, 2018.

23. The following day, despite being terminated and expressly told to refrain from accessing the PayCargo System in any way, Galbreath continued to access the PayCargo system. This prompted an August 16, 2018 cease and desist letter demanding such unauthorized access immediately cease.

24. During his employment with PayCargo, Galbreath co-founded a company called WhiteHack, LLC, which purports to offer the service of hacking into its customers websites for the purpose of exposing vulnerabilities.

25. On August 22, 2018, upon discovering that Galbreath had been operating a business in during his time at PayCargo, PayCargo sent Galbreath another cease and desist letter demanding he immediately stop using the PayCargo name and trademark in connection "WhiteHack Lab."

26. In particular, PayCargo took issue with the fact that Galbreath included false references/testimonials that purported to be from PayCargo, as well as certain defamatory claims about the PayCargo system.

27. On August 27, 2018, PayCargo sent Galbreath another letter demanding access credentials to PayCargo's Amazon Web Services' ("AWS") Management Console account, which housed the PayCargo development environment and which Galbreath had set up using his personal

AWS account, instead of PayCargo's account. Ultimately PayCargo's IT team recovered the account.

28. On September 11, 2018, PayCargo sent Galbreath another demand letter that included a draft affidavit that essentially asked Galbreath to confirm that he had complied with PayCargo's demands to delete any and all confidential and proprietary information on his personal computer, as well as to reaffirm his obligation of confidentiality.

29. Galbreath refused to sign this affidavit.

### Galbreath Reaches Out to PayCargo's Primary Competitor

30. On July 18, 2019, PayCargo filed two lawsuits against its primary competitor, CargoSprint, LLC ("CargoSprint").

31. PayCargo filed suit against CargoSprint f/k/a PayAirCargo and its president, founder, and CEO Joshua Wolf in the Southern District of Florida last year for essentially trademark infringement and misappropriation of trade secrets. *PayCargo, LLC v. CargoSprint, LLC, et al.*, Case No. 1:19-cv-22995 (S.D. Fla.) (the "Florida Litigation").

32. The trademark infringement claims pertain to CargoSprint's use of the name "PayAirCargo."

33. The trade secret claims pertained to CargoSprint and Wolf's initially posing as a customer in the PayCargo system in order to reverse engineer their own competing payment processing system called SprintPay.

34. PayCargo also filed an antitrust case in the Northern District of Georgia against CargoSprint and Joshua Wolf for creating an illegal tying arrangement. The pleadings allege CargoSprint is violating federal antitrust laws by illegally tying its SprintPay payment system to

its SprintPass warehouse management system. *PayCargo, LLC v. CargoSprint, LLC, et al.*, Case No. 3:19-cv-00085 (N.D. Ga.) (the "Georgia Litigation").

35. Between these two cases, there is substantial litigation between PayCargo and CargoSprint.

36. Although incorporated in Georgia, CargoSprint and Wolf operate primarily out of Guadalajara, Mexico.

37. In the Florida Litigation, PayCargo dismissed its trade secret claims, without prejudice, on June 2, 2020.

38. CargoSprint has been announcing the impending release of its new SprintPay platform.

39. Galbreath recently booked a trip to Guadalajara, Mexico for July 3, 2020 through July 5, 2020, in the middle of the global pandemic, to meet with CargoSprint and Wolf.

40. This trip was part of an ongoing effort by Galbreath to share Trade Secrets and proprietary PayCargo information with CargoSprint.

41. Galbreath's disclosure of the PayCargo Trade Secrets and confidential and proprietary information violated his statutory, contractual, and common law duties to preserve the confidentiality of the Trade Secrets.

42. Plaintiff has retained the undersigned counsel to bring this action and has agreed to pay for reasonable attorneys' fees and costs incurred.

43. All conditions precedent to the filing of this action have occurred or have been performed, waived, satisfied, or excused.

## COUNT I
## MISAPPROPRIATION OF TRADE SECRETS
## 18 U.S.C. § 1836(b)
(Against Galbreath)

44. PayCargo re-alleges and incorporates by reference paragraphs 1-43 as if fully set forth herein.

45. PayCargo owns all right title and interest in the Trade Secrets.

46. The Trade Secrets constitute trade secrets within the meaning of 18 U.S.C. § 1839(3) as they are types of business, technical information, engineering information, patterns, formulas, techniques, procedures, programs, and codes PayCargo has taken reasonable measures to keep secret.

47. The Trade Secrets relate to a product or service used in, or intended for us in, interstate and/or foreign commerce.

48. PayCargo derives economic value from the Trade Secrets as they are not generally known to, and not readily ascertainable by, other persons who may be able to obtain economic value from the disclosure or use of the Trade Secrets within the meaning of 18 U.S.C. § 1839(3)(B). Further, the Trade Secrets are used and intended for use in interstate and foreign commerce.

49. Galbreath knew or had reason to know that he acquired the Trade Secrets by improper means and/or disclosed or used those trade secrets without PayCargo's express or implied consent.

50. Galbreath has used and continues to use the misappropriated PayCargo Trade Secrets for his own benefit.

51. As a result of Galbreath's actions, PayCargo has suffered damages, and will continue to suffer irreparable injury.

52. Galbreath's conduct was willful and malicious, with disregard for PayCargo's rights, so as to justify an award of attorneys' fees under 1836(b)(3)(D).

53. Galbreath's conduct requires the Galbreath to pay damages to PayCargo for: (i) PayCargo's actual loss caused by the misappropriation of PayCargo's trade secrets and (ii) damages for any unjust enrichment caused by Galbreath's misappropriation of PayCargo's trade secrets.

WHEREFORE, PayCargo, LLC demands a judgment be entered against Pavel Galbreath a/k/a Pasha Galbreath a/k/a Pasha Probiv for the full amount of its actual damages, all applicable prejudgment and postjudgment interest, damages for any unjust enrichment experienced by Galbreath, disgorgement of profits, reasonable royalties, exemplary damages, injunctive relief, a seizure order, an award of attorney's fees and costs, and any other relief which the Court deems just and proper.

## COUNT II
## CONVERSION OF CONFIDENTIAL AND PROPRIETARY INFORMATION
(Against Galbreath)

54. PayCargo re-alleges and incorporates by reference paragraphs 1-43 as if fully set for herein.

55. Galbreath knowingly, willfully, unlawfully, and with intent to steal converted PayCargo's Trade Secrets.

56. Galbreath's acts of conversion were committed with the intent to permanently, or for an indefinite time, deprive PayCargo of its rightful possession, access to, and use of the converted property, and to deprive PayCargo of the value of converted property.

57. As a direct and proximate result of Galbreath's conduct, PayCargo has suffered the deprivation of its property.

58. Galbreath's actions have interfered with PayCargo's enjoyment of its ownership rights over the converted property, over which Galbreath has improperly exercised acts of dominion and control.

59. As a direct and proximate result of the Galbreath's conduct, PayCargo has suffered and will continue to suffer damages.

WHEREFORE, PayCargo, LLC demands a judgment be entered against Pavel Galbreath a/k/a Pasha Galbreath a/k/a Pasha Probiv for the full amount of its actual damages, all applicable prejudgment and postjudgment interest, an award of costs, and any other relief which the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
(Against Galbreath)

60. PayCargo re-alleges and incorporates by reference paragraphs 1-43 as if fully set for herein.

61. PayCargo and Galbreath entered into the PayCargo Employee Agreement attached as **Exhibit A**.

62. Galbreath has breached the Employment Agreement by retaining the Trade Secrets, by disclosing them to CargoSprint, LLC, a competitor of PayCargo, and by failing to adequately secure the Trade Secrets.

63. Pursuant to the PayCargo Employee Agreement, Galbreath also agreed to "assign and agree to assign, free of any obligation whatsoever to [PayCargo] . . . [his] entire right, title and interest in any developments, designs, patents, inventions and improvements, trade secrets, trademarks, service marks, corporate names, domain names, copyrightable subject matter . . . or proprietary information which [Galbreath] made, or may make . . . while [] employed by

[PayCargo] and/or with the use of the time, material or facilities of the Company, and/or resulting from any tasks assigned to me or work performed by me for or on behalf of the Company."

64. Galbreath, however, breached the PayCargo Employee Agreement by failing to turn over to PayCargo such information upon his termination.

65. Galbreath's breach of the Employment Agreement was material.

66. PayCargo was damaged as a result of this breach.

WHEREFORE, PayCargo, LLC demands a judgment be entered against Pavel Galbreath a/k/a Pasha Galbreath a/k/a Pasha Probiv for the full amount of its actual damages, all applicable prejudgment and post judgment interest, an award of attorney's fees and costs, injunctive relief, and any other relief which the Court deems just and proper.

DATE: July 13, 2020.

> Respectfully submitted,
> XANDER LAW GROUP, P.A.
> One NE 2nd Avenue, Suite 200
> Miami, Florida 33132
> Tel: (305) 767-2001
> Fax: (855) 926-3370
> wayne@xanderlaw.com
> *Attorneys for Plaintiff*
>
> By:   /s/Wayne R. Atkins
>         WAYNE R. ATKINS
>         Fla. Bar No.: 84000